UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **MICHAEL L. GARNER** | **CIVIL DOCKET NO. 23-cv-00521** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **QUARTER NORTH ENERGY, LLC, ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendants, SeaTran Marine, LLC (hereinafter, "SeaTran") and Alliance Offshore, LLC (hereinafter, "Alliance") (collectively, "Defendants"). [Doc. 42]. An Opposition [Doc. 46] was filed by Plaintiff, Michael L. Garner (hereinafter, "Plaintiff"), to which Defendants filed a Reply [Doc. 48]. For the following reasons, Defendants' Motion is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The incident giving rise to this litigation occurred in the South Marsh Island Block of the Gulf of Mexico. [Doc. 46, p. 1]. Defendant Quarter North Energy, LLC (hereinafter, "Quarter North") is the owner of multiple oil and gas platforms located on the outer continental shelf, adjacent to the Louisiana coast. [Doc. 1, p. 1]. The M/V MR. BLAKE is a vessel owned by SeaTran and operated by Alliance. [Doc. 42-7, p. 1]. Alliance was hired by Quarter North to transfer equipment and personnel among its platforms. [Doc. 42-1, p. 5]. Plaintiff was an employee of Danos, LLC and was serving as an independent contractor performing services on a Quarter North

platform pursuant to a contract between Danos and Quarter North. [Doc. 42-2]; [Doc. 47, p. 2].

On April 24, 2022, Plaintiff went to Quarter North's platform with another technician, Mark Hudson, to repair a broken foghorn. [Doc. 47, p. 2]. Quarter North's platform had a boat landing that was two or three feet lower than a typical "plus five" landing. [Doc. 46, p. 3]. Upon completion of their job, Hudson successfully completed a "swing rope" transfer onto the M/V MR. BLAKE while Plaintiff remained on the Quarter North platform. [Doc. 47, p. 2]. Plaintiff then attempted to hand a tool bag to Mark Hudson, grabbing the swing rope with his left hand and leaning out to swing the contractor's tool bag with his right hand. *Id.* While Plaintiff was attempting the transfer, a swell caused the M/V MR. BLAKE to move away from the landing. [Doc. 47, p. 2]. Plaintiff chose to hold on to the bag, rather than letting it drop into the Gulf of Mexico. [Doc. 47, p. 2]. The failed tool bag transfer allegedly caused Plaintiff to feel a "burning sensation in his right shoulder." *Id.* Following this incident, Plaintiff repositioned himself with his right hand holding the rope and his left hand holding the bag. *Id.* He then successfully transferred the bag and subsequently swung onto the boat. *Id.* After returning to the main facility, Plaintiff reported the incident. *Id.* On the day of the accident, there were three-to-four-foot seas in the area. [Doc. 46-1, p.1].

On April 20, 2023, Plaintiff filed this lawsuit against Quarter North, asserting negligence claims under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 43 U.S.C. § 1331, *et seq*. [Doc. 1]. On October 31, 2023, Plaintiff amended his

Complaint (the "Complaint") to include SeaTran and Alliance as defendants. [Doc. 20]. Plaintiff alleges that he injured his shoulder due to: (i) the unreasonably low height of the deck on Quarter North's platform; and (ii) the boat captain's failure "to hold the vessel on location during the transfer." [Doc. 20, p. 2]. Plaintiff asserts in his Complaint that the boat captain was employed by SeaTran and/or Alliance. *Id.* Defendants filed the instant Motion on November 12, 2024, seeking to have Plaintiff's negligence claims dismissed. [Doc. 42]. Plaintiff filed a Memorandum in Opposition to the Motion and Defendants filed a Reply Memorandum. [Docs. 46, 48].

On January 8, 2025, the Court issued an Order directing the parties to submit supplemental briefing on the following issues: (i) the jurisdictional basis for Plaintiff's claims; and (ii) the legal standards applicable to Plaintiff's negligence claims against each defendant, including the capacity in which each defendant is sued. [Doc. 54]. Both Plaintiff and Defendants filed supplemental briefs. [Docs. 55, 56]. As such, Defendants' Motion is now ripe for ruling. This Court has jurisdiction over Plaintiff's claims against Defendants under its admiralty and maritime jurisdiction. 28 U.S.C. § 1333(1).

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson, Inc.,* 477 U.S. at 248.

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019), *citing Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017), *quoting Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot

produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## LAW AND ANALYSIS

In its Motion, Defendants contend that summary judgment is appropriate because the incident resulted from the sea conditions and Plaintiff's own negligence, not the actions of the captain. [Doc. 42-1, p. 4]. Specifically, Defendants argue that: (i) a captain has a limited ability to guard against routine sea movement; (ii) there was no duty to warn of open and obvious sea conditions because it is common for swells to occur in three-to-four feet seas; and (iii) there is no duty to hold the stern of the vessel against the platform in such conditions. *Id.* at pp. 13-19. In opposition, Plaintiff claims that because of the Quarter North platform's low height, the captain should have backed the crew boat up to the boat landing, leaving the engines in reverse to hold the boat against the boat landing. [Doc. 47, p. 3].

### I. What Duty Did Defendants Owe to Plaintiff?

Plaintiff and Defendants present differing perspectives on the nature of the duty owed by Defendants. Plaintiff asserts that although he was a longshoreman, due to the location of the incident and the type of work he was performing, he was not a member of the M/V MR. BLAKE, but rather was merely in the process of boarding the vessel to be transported as a passenger. [Doc. 55, p. 2]. Accordingly, Plaintiff contends that Defendants owed him the general maritime duty owed by vessel owners to those aboard the vessel who are not members of the crew under the standard set forth in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625,

630, 79 S. Ct. 406, 3 L.Ed.2d 550 (U.S. 1959). Defendants counter that because Plaintiff was a longshoreman, the applicable duty is that which was laid out by the United States Supreme Court in *Scindia Steam Navigation Co. v. Del Los Santos*, 451 U.S. 156, 101 S. Ct. 1614, 68 L.Ed.2d 1 (1981).[1]

The Court finds that the *Kermarec* duty of care is applicable to this matter because of the nature of Plaintiff's relationship with Defendants. Plaintiff was not employed by either SeaTran or Alliance. Rather, he was merely aboard the M/V MR. BLAKE as a passenger on the way to and from his worksite. *See Deperrodil v. Bozovic Marine, Inc.,* 842 F.3d 352, 355 (5th Cir. 2016) (applying the *Keramac* standard when the plaintiff was injured on a vessel on the way to his worksite). *See also Smetana v. Apache Corp.,* 2011 WL 5855121, at *4 (W.D. La. Nov. 21, 2011) ("Because [the plaintiff] was merely a passenger on the [vessel] as a means to get to the platform, the *Kermarec* standard is applicable.").[2]

The elements of a maritime tort claim are based on general principles of negligence law.[3] *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000).

---

[1]  In *Scindia*, the Supreme Court set forth three duties a vessel owes to a longshoreman: "(1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene." *Tauzier v. East,* 183 F.Supp.3d 768, 780 (E.D. La. 2016), *citing Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008).

[2]  *See also Counts v. Lafayette Crewboats,* Inc., 622 F. Supp. 299 (W.D. La. 1983) (applying *Keramac* when a platform worker was injured in a swing rope transfer to a small crew boat); *Gonzales v. River Ventures, LLC*, 2017 WL 1364842, at *10 (E.D. La. Apr. 14, 2017) (applying *Keramac* to the plaintiff's claim against the vessel owner/operator hired by his employer to ferry workers to the jobsite).

[3]  Plaintiff asserts that his claim is a general maritime tort claim, whereas Defendants argue that Plaintiff's claim arises under § 905(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, (LHWCA). [Doc. 55, p. 2]; [Doc. 56, p. 2]. Regardless of the nature of the claim, general maritime tort law applies. *Stevenson v. Point*

Plaintiff must prove "that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *Id.* Under *Kermarec*, 358 U.S. at 360, "… a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew."

Under the "reasonable care" standard, "[a] vessel owner owes a duty to exercise reasonable care and ordinary prudence under the circumstances. This duty relates to conditions aboard the vessel over which the vessel owner had operational/actual control." *Williams v. Adriatic Marine, LLC*, 2015 WL 1607932, at *2 (W.D. La. Apr. 8, 2015). "Included in the carrier's duty of care are its obligations to provide safe ingress and egress from the vessel, and the duty to warn passengers of reasonably anticipated dangers—though not openly obvious ones." *Counts v. Lafayette Crewboats*, Inc., 622 F. Supp. 299, 301 (W.D. La. 1983) (citations omitted). *See also Deperrodil,* 842 F.3d at 357. However, "[t]he passenger must also exercise reasonable care and prudence, and since the vessel owner is not an absolute insurer of the passenger's safety, if the passenger is injured absent vessel owner negligence, no recovery is mandated." *Lavergne v. Chevron U.S.A., Inc.*, 782 F. Supp. 1163, 1169 (W.D. La. 1991), *aff'd sub nom. Lavergne v. Chevron U.S.A.*, 980 F.2d 1444 (5th Cir. 1992).

---

*Marie, Inc.,* 697 F. Supp. 285 (E.D. La. 1988) (§ 905(b) claims arise under general maritime law).

## II. Is There a Genuine Dispute of Material Fact as to Whether Defendants Breached Their Duty to Plaintiff?

To start, Defendants' focus on the sea conditions the day of the accident is misplaced. While the Court recognizes that the existing sea conditions on the day of the accident are not *per se* hazardous,[4] the sea conditions at the time of the accident are not the basis of Plaintiff's claim. Rather, Plaintiff's claim is based on the captain's duty to ensure safe ingress onto the M/V MR. BLAKE after taking into consideration the low deck height of the Quarter North platform.

The summary judgment evidence in the record creates a genuine dispute of material fact as to whether the captain breached his duty to provide his passengers safe ingress onto the vessel. Plaintiff contends that the proper way to ensure safe ingress onto the M/V MR. BLAKE was for the captain to "hold the vessel on location during the transfer" by pushing the stern of the vessel against the platform and holding it there by reversing the engines. In response, Defendants submit testimony of the boat captain positing that in the fourteen years he has been a captain, he has never backed up a vessel until its tires come into contact with the platform. [Doc. 42-6, p. 5]. The captain explained that such a maneuver is likely to damage the boat or platform. *Id.*

But the Plaintiff credibly controverts this assertion in his affidavit. There, Plaintiff states that he has seen this type of transfer executed numerous times over

---

[4] The height of the seas on the day of the accident were between three to four feet. [Doc. 46-1, p. 1]. Courts have held that such conditions do not cause particularly unsafe or hazardous conditions. *Callahan v. Gulf Logistics LLC*, 2017 WL 5492454, at *3 (W.D. La. Nov. 15, 2017), *citing Counts,* 622 F. Supp. at 301 (no particular hazard existed in six to eight feet waters); *Lavergne*, 782 F. Supp. at 1168 (same for four to eight feet seas).

the past forty years he has worked in the Gulf of Mexico, and that such transfers are "standard practice." [Doc. 47, p. 3]. Plaintiff further contends that completely backing up the vessel to the platform was possible on the day of the accident,[5] and that if the captain had executed this maneuver, the swell would not have pushed the boat away from the platform at the relevant time. [Doc. 47, p. 3]. And Plaintiff urges that the captain should have employed this maneuver on this specific occasion given the fact that the Quarter North platform is lower than the normal "plus five" landing. [Doc. 47, p. 3]. Because of the height of the platform, Plaintiff explained that he faced greater difficulty boarding the ship and, more importantly, in attempting to hand the tool bag to his co-worker. The height of the platform required Plaintiff not only to employ a swing rope, but to extend "outward and upwards" in attempting to complete the tool bag transfer. *Id.* at p. 3.

As such, Plaintiff's testimony precludes summary judgment. It provides sufficient evidence for the finder of fact to determine that the type of swing transfer required to board the vessel on the day of the accident might have breached the captain's duty to ensure safe ingress. *See Ausama v. C&G Boats, Inc.*, 2021 WL 2351292, at *3 (E.D. La. June 9, 2021) ("In view of the conflicting testimony and evidence regarding whether the vessel's positioning was reasonable at the time of [the plaintiff's] rope swing, the Court concludes that significant issues of fact exist such that partial summary judgment would not be appropriate."). This is further

---

[5] "Obviously, one cannot do this if the seas are rough. On April 25, 2022, the seas were not rough; there was no reason the boat captain of the M/V MR. BLAKE could not have laid the boat hard up against the boat landing." [Doc. 47, p. 3].

supported by the fact that Plaintiff's ingress onto the vessel required that he bring with him a thirty-pound tool bag.  [Doc. 47, p. 2].

## CONCLUSION

For the foregoing reasons, the Court finds that there are genuine disputes of material fact that preclude summary judgment as a matter of law.  Fed. R. Civ. P. 56.

Accordingly,

IT IS HEREBY ORDERED that Defendants' MOTION FOR SUMMARY JUDGMENT [Doc. 42] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 29th day of January 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE